PETER YOUNGERS, JR., ET AL., APPELLANTS, V. EXETER
CEMETERY ASSOCIATION, APPELLEE.

FILED NOVEMBER 9, 1909. No. 15,803.

Cemetery Associations: APPOINTMENT OF RECEIVER. Evidence ex-
amined, its substance stated in the opinion, and *held* sufficient to
sustain the findings and judgment of the district court.

APPEAL from the district court for Fillmore county:
LESLIE G. HURD, JUDGE. *Affirmed.*

*F. B. Donisthorpe,* for appellants.

*Charles H. Sloan, F. W. Sloan* and *J. J. Burke, contra.*

BARNES, J.

This action was commenced in the district court for
Fillmore county by Peter Youngers, Jr., and 19 others
against the Exeter Cemetery Association, a private
corporation, to require the defendant to disclose the
names of its different officers, for the appointment of a
receiver to take charge of its property until a competent
person or persons could be appointed to manage its
affairs, to require an accounting, and to compel it to
turn over to the receiver, or such new trustees as should
be appointed by the court, all of its real estate and money
arising from the sale of lots, and also to enjoin the cor-
poration from selling any of its real estate not already
platted until the further order of the court, and for gen-
eral equitable relief. The petition set forth the organiza-
tion of the defendant, together with its articles of
incorporation, and alleged that after its organization it
purchased from the Burlington railroad a 40-acre tract of
land, and thereafter platted 10 acres of it into lots to be
sold and improved for burial purposes; that the land
platted is now insufficient in extent for the accommoda-
tion of the public residing in the neighborhood of the
cemetery; that nearly all of the lots already platted have

been sold, and that it will be necessary to plat at least another 10 acres of the 40-acre tract above mentioned in order to furnish sufficient accommodations for burial purposes. It was further alleged that the defendant association, seeking to gain a large amount of money for its own use from the sale of the lots, has been demanding an exorbitant price for the same, charging as high as $20 for a single lot; that the defendant association deliberately transferred by deed to one L. T. Mead a piece or parcel of said land as platted, 78 rods long and 4 rods wide; that the defendant association has neglected to set out trees on the cemetery grounds, and to beautify and improve the same; that it has failed to secure a sufficient supply of water necessary for the care of said grounds, and that, after lot owners have tried to beautify and adorn their lots by the planting of trees and shrubbery thereon, the defendant association negligently leased said ground to parties for cutting grass to make hay, and that the trees and shrubbery so planted have been thereby cut down and destroyed; that no proper fence has been placed and maintained around said platted cemetery grounds for the protection of the same, and the defendant association has wholly failed to apply the funds coming into its hands from the sale of burial lots as required by the statute, but has converted the same to its own private purposes. It is further averred in the petition that the officers of the defendant association are incompetent, improper and unsuitable persons to maintain the cemetery, or care for the ornamentation of said grounds, or sell the lots thereof, and account for the proceeds therefrom. To this petition the defendant interposed an answer containing both general and special denials, together with affirmative matters of defense, sufficient in form and substance to put in issue all the averments of the plaintiffs' petition. The plaintiffs filed a reply in the form of a general denial, and upon the issues thus joined a trial was had which resulted in a judgment for the defendant, and the plaintiffs have appealed.

It thus appears that the only question presented for our determination is one of fact. The evidence discloses without conflict that in the month of April, 1873, certain persons residing in or near the village of Exeter organized themselves into a cemetery association, adopted articles of incorporation, together with a constitution and by-laws, which were filed with the county clerk of Fillmore county; that, after perfecting their organization, they entered into negotiations with the Burlington railroad to purchase the tract of land in question, which seems to have been the most suitable site for a cemetery in that vicinity. It was ascertained, however, that the railroad company would not sell a less quantity of land than 40 acres, and this was the reason that so much land was purchased. After having entered into a contract for the purchase of the land, and after obtaining possession of the same from the railroad company, the corporation procured the services of a surveyor, and at a considerable expense laid out and platted 10 acres of the 40-acre tract for cemetery purposes, and caused the plat to be recorded in the manner provided by law; that it fixed the price of burial lots at $10 each, and any one who paid that amount was entitled to one share of the corporate stock. It further appears that some 44 shares of stock were sold, but for one reason or another a number of the subscribers forfeited their contracts, so that the outstanding stock numbers only 28 shares. The money received from the sale of stock was not sufficient to carry out the object for which the association was formed, and thereupon assessments were made upon the stockholders from time to time, and the price of lots was increased to $20 each. Trees were purchased and planted, and the cemetery ground was laid out into avenues and properly fenced, and from that time on the business has been conducted by the original incorporators or their successors in office for and on behalf of the association until the present day. It further appears without controversy that the 10 acres of land laid out and platted for cemetery purposes have never been taxed, but

that the association has paid taxes upon the remaining 30 acres of land each year without objection, and has used the same for farming purposes, and has never claimed that it was exempt from taxes.

Coming now to consider the evidence introduced by plaintiffs, we find that some of their witnesses testified that the fence around the cemetery has at times been out of repair; that the roads, or avenues running through the cemetery and extending from the village of Exeter to the entrance of the cemetery grounds are somewhat rutty, but they frankly admitted that they were safe for travel, and had been constantly in use, and that no complaint was ever made by them to the officers of the association in regard to the condition of the roads. Some of plaintiffs' witnesses also testified that the association permitted certain persons to mow the grass in the inclosure, and receive the hay that they were able to obtain thereby as their compensation for the work; and there is some evidence in the record that in mowing the grass and raking it up some slight injuries have occurred to trees and shrubbery set out by lot owners, but such injuries seem to have been almost infinitesimal; but they all admitted that it was proper and necessary to cut and remove the grass in order to avoid damage by fires and to keep the premises in a sightly condition. It appears that, since the commencement of this action, a prairie fire came from the north and ran over the cemetery, doing some damage to the fences, shrubs and trees, and to some of the inclosures around the graves. It was not shown, however, that the fire was caused by the negligence of the corporation, or that it could have been prevented by any of its officers or agents. There was no evidence introduced by the plaintiffs which showed or tended to show a lack of water necessary to suitably preserve and care for the growing trees, shrubs and flowers planted in the cemetery. On the other hand, it was shown that, when the question of water supply was raised, the association immediately

constructed a well in the center of the grounds which had since proved amply sufficient to furnish water for all necessary and proper purposes connected with the maintenance of the cemetery. It clearly appears from the testimony of the witnesses called by the defendant that, before this action was commenced, arrangements had been made to construct a new and suitable fence around the grounds; that a sufficient number of trees of different and suitable kinds were growing thereon to beautify the cemetery and give it an attractive appearance. It also appears that there is a large number of unsold lots, and no necessity now exists or will exist in the near future for platting any more of the ground belonging to the association for burial purposes. As to the tract of land alleged to have been deeded to one Mead, it appears without dispute that this land was given to Mead in exchange for another tract of exactly the same length and breadth in order to obtain a better, more suitable and more convenient road from the village of Exeter to the cemetery than the one which had theretofore existed.

In conclusion, we find from a preponderance of the evidence that officers and members of the association have performed their duties to the public by caring for and maintaining the cemetery in question in a suitable and creditable manner. In fact, the witnesses practically agree that the cemetery is as well maintained as any cemetery in or near any village of similar size and surroundings as the village of Exeter in that part of the state. It is also satisfactorily shown that the men in charge of the affairs of the corporation are capable and efficient business men, and there is no evidence which would justify a court in removing them from their positions, and the appointment of a receiver or any other persons to take charge of the affairs of the defendant association. In short, if the plaintiffs' petition was sufficient to state a cause of action, they have completely failed to establish any of its material allegations. The district·

court arrived at the proper conclusion in this case, and, for the foregoing reasons, its judgment is in all things

AFFIRMED.